UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARLEE SUTHERLAND,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KITSAP COUNTY, KITSAP COUNTY PUBLIC WORKS, RANDY CASTEEL, JON BRAND, RON YINGLING, PENNY STARKEY, GREG CIOC,<br><br>　　　　　　Defendants. | Case No. C05-5462RJB<br><br>ORDER DENYING, IN PART, AND GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 37. The Court has reviewed all documents filed regarding this Motion, has reviewed the entire file, and is fully advised.

## I.   PROCEDURAL AND BASIC FACTS

Plaintiff, a former Kitsap County employee, filed her Amended Complaint in this matter on November 9, 2005. Dkt. 8. Plaintiff alleges that Defendants discriminated against her because of her gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.180. *Id*. at 3. On June 28, 2006, Plaintiff's claims under WLAD were dismissed because she failed to comply with the Washington claims filing statute, RCW 4.96.020. Dkt. 35. Plaintiff's remaining claims stem from the following events.

ORDER - 1

Plaintiff began working for the Kitsap County Public Works Department ("PWD") in April of 1996. Dkt. 43-4, at 1. Plaintiff was to report to work by 6:00 a.m. Dkt. 50-2, at 2. Her direct supervisor was Greg Cioc. Dkt. 39, at 2. Cioc's supervisor was David Smith. *Id*. Smith was supervised by Ron Yingling (until he retired in October of 2001) and then by Jonathon Brand. Dkt. 43-2, at 2, Dkt. 39, at 2. Yingling and Brand were supervised by Randy Casteel, the Director of the PWD. Dkt. 39, at 2. Castel reports to the County Administrator, Malcom Flemming. *Id*.

In the spring of 2001, Yingling told Plaintiff that she could initiate the process of getting her position reclassified to reflect the work that she was actually doing. Dkt. 43-3, at 29. Plaintiff wanted to be reclassified as an Engineering Technician I, which was a promotion. Dkt. 43-3, at 65, Dkt. 43-4, at 10. Plaintiff filled out the paperwork in June of 2001. Dkt. 43-3, at 32. She was told that the paperwork was given to Lynn Flaning. *Id*. In the fall of 2001, and in 2002, Plaintiff emailed Flaning regarding the status of her reclassification and Flaning did not respond to her. *Id*. at 33-35. Plaintiff emailed Cioc on December 3, 2001 regarding the status of her reclassification and he said he'd check on it. *Id*. Smith told Plaintiff that he thought Yingling was "stonewalling" her application. *Id*. There is evidence in the record that her duties were limited by upper management in order to prevent her from being able to show, during a reclassification review, that she was working out of class. Dkt. 43-2, at 6 and 17; Dkt. 43-3, at 23. Plaintiff resubmitted her reclassification request to Cioc in September 2003. Dkt. 43-3, at 46, Dkt. 39, at 6.

On Friday July 30, 2004, Plaintiff met with Smith and told him that Cioc was creating a hostile work environment for her. Dkt. 43-2, at 5. She reported that Cioc stared at her in a sexually suggestive manner. *Id.* Although Brand did not agree with Smith's decision, he allowed Smith to reassign Plaintiff to a new supervisor, Bill Zupancic. Dkt. 38, at 15. However, Plaintiff testified that Cioc's leering never stopped. Dkt. 38, at 15. Cioc was permitted to serve on the committee which was evaluating Plaintiff's request for reclassification of her position. Dkt. 43-4, at 7.

The record indicates that on September 1, 2004, Brand noticed Plaintiff had not arrived to work on time and asked Smith about her whereabouts. Dkt. 39-1, at 2. On September 7, 2004, Plaintiff sent an

ORDER - 2

email to Malcom Fleming, the County Administrator, regarding the status of her reclassification and complaining of the delay. Dkt. 39-2, at 26. She copied Brand, Smith, and Zupancic. *Id*. On September 8, 2004, Brand contacted the Director of the Human Resources Department, Penny Starkey, regarding Plaintiff's late arrivals. Dkt. 39-1, at 2. An electronic key card report was generated showing the times that Plaintiff's card was used to enter the building. Dkt. 39-2, at 3. The last day on the report for 2004 was October 27, 2004. *Id.* On November 15, 2004, Brand states that at a meeting between himself, Starkey, Smith, and Zupancic, considering the "egregiousness of [Plaintiff's] false reporting of time worked, we concluded that [Plaintiff's] employment should be terminated." Dkt. 39-1, at 3.

On November 22, 2004, Plaintiff was given a pre-termination hearing notice, explaining to Plaintiff that Defendants were considering terminating her for falsifying her time cards. Dkt. 50-2, at 2. Attached to the letter was the key card record purporting to reflect when Plaintiff arrived at work. *Id*. at 4-12. Plaintiff testified that she did arrive late at times, but would make up the time during her breaks and lunch hour. Dkt. 43-4, at 8. Plaintiff did not notify her supervisors of her late arrivals, or of her making up the time. Dkt. 39, at 3. Plaintiff reported on her timecard that she arrived at 6:00 a.m. each morning. *Id*. Plaintiff was not given access to her computer to get evidence with which to defend herself at the pre-termination hearing. Dkt. 43-4, at 9. Plaintiff's termination was effective December of 2004. Dkt. 38, at 30.

Plaintiff car-pooled with Benson Burlson, a male employee in her department. Dkt. 43-4, at 9. A pre-termination hearing was also held regarding Burlson's late arrivals. Dkt. 39, at 5. Burlson submitted evidence at his pre-termination hearing that he compensated for his late arrivals by working beyond the end of his shift. *Id*. Burlson was given a written reprimand. *Id*.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission. Dkt. 38, at 29. This suit followed.

Defendants now move for summary judgment on Plaintiff's Title VII retaliation claims (which are based on her complaints regarding Cioc and the delay in her reclassification requests) arguing that: 1) there is no causal link between her complaining about her Cioc and her termination, 2) she was not engaged in a

ORDER - 3

protected activity when she complained to the County Administrator about the delay in her reclassification request, 3) Plaintiff did not make a claim for retaliation for complaining about the delay in her reclassification in her EEOC complaint, and 4) Plaintiff was fired for a non-discriminatory reason, falsifying her timecards. Dkt. 37. Defendants move to have Plaintiff's Title VII hostile work environment claim dismissed because her allegations regarding Cioc were not severe or pervasive enough to create an abusive working environment. *Id*. Defendants move to dismiss Plaintiff's disparate treatment claim under Title VII arguing she has failed to exhaust administrative remedies because she did not raise this claim in her EEOC complaint. *Id*.

Plaintiff responds that her retaliation claim should not be dismissed because 1) there is a causal link, the short time frame (a few months) between her complaints about her supervisor and her termination, 2) Plaintiff complained about the delay in her reclassification in her EEOC complaint, 3) termination for falsifying her timecards was a pretext for discrimination because it was common for other employees to come in late and make up the time later in the day and the record contains statements about "keeping women in their place." Dkt. 43. Her complaints regarding her supervisor's behavior are sufficient to raise issues of fact on a claim for sex discrimination. *Id*. Plaintiff timely filed her complaints with the EEOC. *Id*.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must

ORDER - 4

present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

B.     **RETALIATION CLAIM**

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.*

ORDER - 5

1. Prima Facie Case

   a. *Involvement in a Protected Activity*

Plaintiff engaged in a protected activity when she approached Smith about Cioc's alleged sexual harassment. *Brooks* at 928.

Viewing the evidence in a light most favorable to Plaintiff, she engaged in protected activity when Plaintiff contacted the County Administrator (the person to whom her department head reports) regarding the over three year delay in the reclassification process. Defendants do not dispute that the reclassification Plaintiff sought could have resulted in a promotion. Dkt. 52, at 2. Plaintiff first applied for a reclassification of her position in June of 2001. Dkt. 43-3, at 29. Plaintiff contacted various supervisors and the human resources department regarding the status of her request for several years. Dkt. 43-3, at 33-35, and Dkt. 43-4, at 3. There is evidence in the record that she was either ignored or that she was given the "run around" for over three years. *Id.* Moreover, there is evidence in the record that Plaintiff's task assignments were limited by upper management to prevent her from doing working out of her classification after Plaintiff made her request. Dkt. 43-2, at 17. There are issues of fact as to whether Plaintiff's application for a promotion, and subsequent attempts at following up on that potential promotion, constitute protected activity for the purposes of Title VII. Plaintiff has met the first prong of the prima facie case.

   b. *Adverse Employment Action*

Plaintiff's termination constitutes an adverse employment action, *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004), as does failure to consider Plaintiff for a promotion, *Brooks* at 928, so Plaintiff has met the second prong of the prima facie case.

   c. *Causal Connection between Protected Activity and Adverse Action*

Plaintiff has also offered evidence of a causal connection between the protected activities and the adverse employment action, meeting the third prong of the prima facie case. "The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *See e.g.*

ORDER - 6

*Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir.1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity). Plaintiff raised her concerns about her supervisor on July 29, 2004. Dkt. 38, at 12. She contacted the County Administrator regarding the delay in the reclassification of her position on September 7, 2004. Dkt. 39-2, at 26. On September 8, 2004, Brand contacted the Human Resources Department regarding her tardiness. Dkt. 39-1, at 2. The last date on the electronic key card report was October 27, 2004. *Id.* at 3. Defendants held a meeting regarding Plaintiff's continued employment on November 15, 2004. *Id.* Plaintiff was notified of her pre-termination hearing on November 22, 2004. Dkt. 39-2, at 2. Based on the circumstances, a jury could infer that there is a causal link between her complaints about her supervisor and the delay in her promotion and Defendants' termination of her employment.

    2. <u>Defendants' Proffered Reasons for Plaintiff's Termination</u>

Defendants state that Plaintiff had an egregious record of tardiness, and was terminated for falsifying her time card. Dkts. 37 and 48. Defendants have offered a legitimate reason for Plaintiff's termination.

Plaintiff "objected" to the use of time and/or key card records of other employees in a Responsive Declaration of Randy Loun. Dkt. 44. Plaintiff argues that this evidence was the subject of discovery requests that the Defendants failed to provide. Due to Plaintiff's failure to comply with Local Federal Rule of Civil Procedure 7 this "objection" should not be construed as a motion.

    3. <u>Evidence of Pretext</u>

At this stage, Plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by Defendants was a pretext. *Brooks* at 928. A plaintiff may prove pretext by either direct or circumstantial evidence. *Dominguez - Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1038-39 (9th Cir. 2005). "Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption. Direct evidence typically consists of clearly sexist, racist, or similarly

ORDER - 7

discriminatory statements or actions by the employer." *Id.* If a plaintiff has only circumstantial evidence, that evidence must be "specific" and "substantial" evidence of pretext to survive summary judgment. *Id.*

There is direct evidence in the record, if believed, of Defendants' discriminatory animus. According to Smith, "Mr. Yingling stated to me [Smith] shortly after Carlee asked if she could be reclassified, 'I should have fired that cunt when she worked for Doug (Mr. Bear).'" Dkt. 43-2, at 4. Plaintiff's original request for reclassification was found in a "dusty manila file folder" on Yingling's desk after he retired. Dkt. 43-2, at 4. Brand, Yingling's replacement, stated to Smith that he felt he would get sued over the fact that the "evidence found suggested Yingling had intentionally stalled her reclassification from the beginning because she was a woman seeking advancement in a man's field." Dkt. 43-2, at 6. Defendants argues that his evidence is inadmissible hearsay, but, that is an issue that is not clear at this time.

Moreover, the record contains "specific" and "substantial" circumstantial evidence which implies Defendants' proffered reason is a pretext. The record indicates that it is accepted practice at the PWD to come in late and make up the time later in the day. Dkt. 43-2, at 11; Dkt. 43-3, at 59; Dkt. 43-4, at 8; and Dkt. 49-4, at 6. This was tacitly allowed by the supervisors. Dkt. 43-2, at 11 and Dkt. 49-4, at 6-7.

    4.  Sufficiency of EEOC Complaint

"Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1099 (9th Cir. 2002) (*citing* 42 U.S.C. § 2000e-5(b)). The language of EEOC charges are construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading. *Id.* at 1100 (*internal citation omitted*). "The crucial element of a charge of discrimination is the factual statement contained therein. Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* (*internal citation omitted*).

Defendants argue that Plaintiff did not make a claim for retaliation for complaining about the delay

ORDER - 8

in her reclassification in her EEOC complaint. Dkt. 37. Plaintiff's EEOC complaint reads, in pertinent part,

> I allege that I was terminated in retaliation for having complained about sexual harassment and because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.
> Retaliation was for emailing the County Administrator about the County's wrong doing in the event of my reclassification.

Dkt. 38, at 30. Liberally construing Plaintiff's EEOC complaint, she sufficiently raises the issue of retaliation in violation of Title VII for contacting the County Administrator about her reclassification.

### 5. Conclusion

Plaintiff has produced material facts which are in dispute as to her retaliation claim. Plaintiff exhausted her administrative remedies as to her retaliation claim. Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim should be denied.

## C. SEXUAL HARASSMENT

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)(*citing Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995)).

Plaintiff has shown that there are issues of fact as to whether she was subject to "verbal or physical conduct of a . . . sexual nature." *Gregory* at 1074. Plaintiff testified that Cioc was constantly walking by her office and would stare at her. Dkt. 43-3, at 13. She noted that he did so 14 times in a two hour period one day. *Id.* Plaintiff testified that he would look at her the entire time he passed her door, "breaking his neck looking in." Dkt. 43-3, at 15. Plaintiff testified that Cioc would touch her in a manner that she felt was inappropriate. Dkt. 43-3, at 15. He would put his hand on her back as they walked down the hall. Dkt. 43-3, at 15. Plaintiff testified that Cioc would lean against her body as he worked on her computer with her mouse. Dkt. 43-3, at 16 and 21. Plaintiff testified that she tried closing her door in an effort to protect herself and Cioc told her she had to keep it open. Dkt. 43-3, at 16. Plaintiff stated that she and

others in the County were involved in a weight loss challenge. Dkt. 43-4, at 5, and Dkt. 38, at 9. They would weigh in front of each other. *Id.* Plaintiff testified that Cioc asked her whether she was going to weigh in her clothes or without them. *Id.*

Defendants do not contest that Cioc's behavior toward Plaintiff was unwelcome. Defendants do argue that Cioc's conduct was not severe enough to alter the conditions of the Plaintiff's employment and create an abusive work environment, particularly after she was given a new supervisor. Dkt. 37. There are issues of fact as to whether Cioc's conduct was severe enough to alter the conditions of the Plaintiff's employment. Plaintiff testified that even after the change in supervisor, Cioc's leering did not stop. Dkt. 38, at 15. Defendants' Motion for Summary Judgment on Plaintiff's hostile work environment claim should be denied.

### D. EXHAUSTION OF ADMINISTRATIVE REMEDIES FOR TITLE VII CLAIM ON BEHALF OF OTHER FEMALE EMPLOYEES OF THE COUNTY

Defendant moves for summary dismissal of Plaintiff's claim that the County denied female workers equal opportunities for promotional advancement because of preferential treatment given to male coworkers due to Plaintiff's failure to exhaust administrative remedies. Dkt. 37.

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B.* at 1100 (*internal citation omitted*).

Plaintiff's Amended Complaint alleges that Defendants' discriminatory practices include: "[c]reating and tolerating a hostile work environment against females as a class and by denying female workers equal opportunities for promotional advancement because of preferential treatment given to male coworkers." Dkt. 8, at 3. Even considering the "alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred" Plaintiff has failed to properly exhaust her

ORDER - 10

claim, to the extent that she makes one, that the County has discriminated against women as a class. Plaintiff's civil claims are not reasonably related to the charges in her EEOC complaint. Defendants' Motion for Summary Judgment on Plaintiff's Title VII claim on behalf of other female County employees should be granted.

### III. ORDER

Therefore, it is hereby, **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 37) is **DENIED, IN PART, AND GRANTED, IN PART** as follows:

- Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim is **DENIED**;
- Defendants' Motion for Summary Judgment on Plaintiff's sexual harassment claim is **DENIED**;
- Defendants' Motion for Summary Judgment on Plaintiff's Title VII claim on behalf of all female employees in Kitsap County is **GRANTED** and that claim is dismissed.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of September, 2006.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge